UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JESSICA COLEMAN, et al.,<br><br>    Plaintiffs<br><br>v.<br><br>ROBERT TELLES, et al.,<br><br>    Defendants | Case No.: 2:24-cv-00930-APG-MDC<br><br>**Order Granting in Part Defendants' Motions to Dismiss**<br><br>[ECF Nos. 13, 17] |

      Jessica Coleman, Aleisha Goodwin, Noraine Pagdanganan, and Rita Reid sue Robert Telles and Clark County for claims arising out of their employment with the Clark County Public Administrator's Office (PAO) while Telles was the Public Administrator. All plaintiffs assert claims for intentional infliction of emotional distress (count one), retaliation in violation of Title VII and Nevada Revised Statutes (NRS) § 613.340 (counts two and three), and hostile work environment under Title VII and NRS § 613.330 (counts twelve and thirteen). Goodwin and Coleman also assert claims for sex discrimination in violation of Title VII and NRS § 613.330 (counts four and five). Goodwin asserts religious discrimination claims under Title VII and NRS § 613.330 (counts six and seven). Reid asserts age discrimination claims under the Age Discrimination in Employment Act (ADEA) and NRS § 613.330 (counts eight and nine). And Coleman asserts race discrimination claims under Title VII and NRS § 613.330 (counts ten and eleven). The plaintiffs allege that Clark County is liable on each of these claims through vicarious liability.

      Telles and Clark County separately move to dismiss on a variety of grounds. The plaintiffs concede some of their claims should be dismissed, but otherwise oppose dismissal and request leave to amend.

The parties are familiar with the facts, so I repeat them here only as necessary to resolve the motions. Additionally, the parties analyze the state and federal discrimination claims under the same standards, so I likewise will address the claims under the federal standards. The plaintiffs have voluntarily dismissed their IIED claims, Reid voluntarily dismissed her retaliation claims, and Coleman voluntarily dismissed her race discrimination claims. I dismiss Coleman and Pagdanganan's retaliation claims, Reid's age discrimination claims, and all plaintiffs' hostile work environment claims, with leave to amend. I do not dismiss Goodwin's retaliation claims, Goodwin and Coleman's sex discrimination claims, or Goodwin's religious discrimination claims.

I. ANALYSIS

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). However, I do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017) (quotation omitted). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

I do not consider the exhibits attached to Telles' motion because the exhibits are not attached to the complaint, incorporated by reference in the complaint, or subject to judicial notice. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); ECF No. 13 at 23-135. I will not convert his motion to one for summary judgment at this early stage of the case. Fed. R. Civ. P. 56(d); *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir.

2007) (reviewing a district court's decision on whether to convert a motion to dismiss into one for summary judgment for abuse of discretion).

Telles argues throughout his motion that the complaint's allegations are false, and he sets forth his own version of events. I deny Telles' motion to the extent he is disputing the complaint's factual allegations because I must accept those allegations as true at this stage of the proceedings. I therefore do not further address Telles' arguments that the plaintiffs' allegations are false.

**A. Time Bar**

Telles argues that the plaintiffs have not alleged when they filed charges with the Equal Employment Opportunity Commission (EEOC), so it is not clear what alleged conduct would fall within the 300 days before the plaintiffs filed their charges. He thus contends that portions of the plaintiffs' claims may be time-barred because he was no longer the Public Administrator as of early September 2022 and the plaintiffs received their right to sue notices on February 28, 2024. The plaintiffs acknowledge that they did not allege when they filed their EEOC charges and seek leave to amend to add this information to the complaint. They represent that Coleman, Goodwin, and Pagdanganan did so on February 3, 2023, and that Reid filed hers on February 24, 2023. They assert that therefore at least some conduct occurred within 300 days of their EEOC filings and that, for their hostile work environment claims, they can draw on earlier incidents under the continuing violations doctrine.

I may dismiss a claim "as untimely pursuant to a 12(b)(6) motion only when the running of the statute of limitations is apparent on the face of the complaint." *United States ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (simplified). Because the plaintiffs did not allege when they filed their EEOC charges, and because their

hostile work environment claims may include conduct that falls outside the statutory period under the continuing violations doctrine, it is not apparent from the face of the complaint that their Title VII and state law discrimination claims are untimely. *See* 42 U.S.C. § 2000e-5(e)(1); Nev. Rev. Stat. § 613.430; *Scott v. Gino Morena Enters., LLC*, 888 F.3d 1101, 1112 (9th Cir. 2018). I therefore deny Telles' motion to dismiss on this ground. However, the plaintiffs have leave to amend to allege when they filed their EEOC charges and any facts that would support the timeliness of their claims.

### B. Intentional Infliction of Emotional Distress (Count One)

All the plaintiffs assert claims for intentional infliction of emotional distress (IIED). Telles argues that the plaintiffs cannot assert IIED claims based on illegal employment practices because NRS § 613.330 provides their exclusive remedy. The plaintiffs respond by conceding that they cannot pursue these claims, so they voluntarily dismiss them. ECF No. 15 at 16. The plaintiffs' IIED claims are therefore voluntarily dismissed as to both Telles and Clark County.

### C. Retaliation (Counts Two and Three)

All the plaintiffs assert claims for retaliation under Title VII and NRS § 613.340. In response to Clark County's motion, Reid voluntarily dismissed her retaliation claim because she did not exhaust administrative remedies. ECF No. 26 at 11. I address the parties' arguments as to Goodwin, Coleman, and Pagdanganan below.

Title VII prohibits employers from discriminating against employees in retaliation for opposing "any practice made an unlawful employment practice by this subchapter" or for "charg[ing], testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To make out a prima facie retaliation case, a plaintiff must allege that she "engaged in protected activity, that she

suffered a materially adverse action, and that "there was a causal relationship between the two." *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 422 (9th Cir. 2013).

An adverse employment action means "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1242-43 (9th Cir. 2000) (quotation omitted). "[M]ere ostracism by co-workers does not constitute an adverse employment action." *Id.* at 1241 (quotation omitted). But a lateral transfer may constitute an adverse employment action for a retaliation claim under certain circumstances.[1] *Id.* "Context matters." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006). Thus, a reassignment of duties may also constitute an adverse employment action. *Id.* at 70-71 ("Common sense suggests that one good way to discourage an employee . . . from bringing discrimination charges would be to insist that she spend more time performing the more arduous duties and less time performing those that are easier or more agreeable."). "Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* at 71 (quotation omitted).

"Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). "This requires proof that the unlawful retaliation would not have occurred in the absence

---

[1] Thus, Title VII's "antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006); *see also Campbell v. Haw. Dep't of Educ.*, 892 F.3d 1005, 1021 (9th Cir. 2018) (stating that although the employer's "alleged actions cannot support [the plaintiff's] claims of disparate treatment, the same is not necessarily true for her retaliation claims").

of the alleged wrongful action or actions of the employer." *Id.* at 360.  Causation "may be inferred from proximity in time between the protected action and the allegedly retaliatory employment decision." *Ray*, 217 F.3d at 1244 (quotation omitted).  The plaintiff "must make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in protected activity." *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003), *opinion amended on denial of reh'g*, No. 00-35999, 2003 WL 21027351 (9th Cir. May 8, 2003).

          1.  Goodwin

Telles argues that the timing does not support an inference that he retaliated against Goodwin because nearly a year passed between when Goodwin complained to HR and when Telles reassigned Goodwin to assist Reid in supervising part-time investigators and handling new case intake.  He further asserts the reassignment was not an adverse employment action because it did not deprive Goodwin of advancement opportunities, she received positive performance reviews, and she was not denied overtime.  Clark County did not move to dismiss Goodwin's retaliation claim.  The plaintiffs respond that Telles relies on his own version of events to argue that the reassignment was not retaliatory or an adverse employment action.

According to the complaint, when Telles first became the Public Administrator, he behaved inappropriately toward Goodwin, including touching her back, stroking her arm, staring at her breasts, and making inappropriate comments about her appearance. ECF No. 1 at 8.  Goodwin rejected Telles' advances, which made him hostile toward her, so she filed a grievance[2] with Clark County's human resources (HR) department and office of diversity in August 2020.

---

[2] To avoid confusion between the employees' complaints to HR and the complaint in this case, I refer to the HR complaints as grievances.

*Id.* at 7-9. Additionally, in early 2019, Telles learned that Goodwin was a member of the Church of Jesus Christ of Latter-Day Saints, and he "became even more hostile" toward her. *Id.* at 9. "This hostile treatment caused [her] to file her first [grievance] against Telles in August 2020." *Id.* The plaintiffs allege that "around this same time," Telles told Goodwin to move her things to the reception desk that was right outside of Telles' office where he could keep an eye on who she spoke with. *Id.* "At the same point," he stripped her of her duties as Estate Coordinator and told her to handle intakes with Reid. *Id.* According to the complaint, this change in duties made Goodwin less competitive for promotions in the future. *Id.* Additionally, Telles denied her the opportunity to work overtime. *Id.* at 10.

Goodwin thereafter filed a second grievance against Telles, although the complaint does not state when she did so. *Id.* According to the complaint, before Telles had learned about the second grievance, he had moved her things to an office. *Id.* But once he learned about the second grievance, he moved her things "into a cubicle from which he could more easily watch her." *Id.* The plaintiffs also allege generally that once Telles became aware of the grievances he would "openly yell at, belittle, harass, and create deeply uncomfortable environments for each of the Plaintiffs." *Id.* at 12.

Goodwin has plausibly alleged that she engaged in protected activity because she complained about Telles to her employer's HR department. She also adequately alleges a materially adverse action because she alleges that Telles stripped her of her duties as an Estate Coordinator, reassigned her to a less desirable job that made her less competitive for promotions in the future, and denied her the opportunity to work overtime. She thus plausibly alleges actions that are reasonably likely to deter an employee from engaging in protected activity. Finally, she adequately alleges causation through an inference of timing. She alleges that around the same

7

time that she filed her grievance, Telles stripped her of her duties and reassigned her. Although she does not provide specific dates, it is reasonable to infer, at this stage, that there was sufficiently close timing between the grievance and the allegedly retaliatory acts to raise an inference of a retaliatory motive. I therefore deny Telles' motion to dismiss Goodwin's retaliation claims.

### 2. Coleman

Telles argues that Coleman does not allege any facts to support a retaliation claim because although she generally alleges "unlawful conduct," she did not allege that conduct was retaliatory. ECF No. 13 at 17. Clark County argues that Coleman did not sufficiently allege she suffered an adverse employment action. The plaintiffs respond that Coleman alleged that she was consistently and continually treated poorly in retaliation for serving as a witness to Goodwin's grievance about Telles, citing paragraphs 57-59 of the complaint in this case. And the plaintiffs argue that Coleman adequately alleged an adverse employment action because she faced increased harassment, such as Telles isolating her in the vault, yelling at her, physically intimidating her, and giving her additional burdensome responsibilities during the COVID shutdown. In reply, Clark County argues that the examples Coleman has pointed to cannot support retaliation because they took place either before Goodwin filed her grievance or too long after Goodwin complained to support an inference of a retaliatory motive.

Paragraphs 57-59 of the complaint do not adequately allege retaliatory conduct. Paragraph 57 states that Coleman served as a witness for Goodwin's grievance. ECF No. 1 at 7. Paragraph 58 alleges that Telles knew Coleman was a witness and "this fueled his increased discrimination, harassment, and general cruelty towards her." *Id.* Paragraph 59 refers to Reid,

not Coleman. *Id.* The conclusory allegation of increased harassment and discrimination in paragraph 58 is insufficient to plausibly state retaliation.

Coleman identifies two specific incidents in the complaint, along with a general allegation that Telles required her to perform more work than other employees during the COVID shutdown. First, she alleges that in March 2020, Telles entered the vault where she worked, got physically close to her, made comments about her isolating herself, leaned into her face and told her she would die alone, and stated that she could not take any criticism. *Id.* at 7. Even if this incident could amount to an adverse action, it occurred before Goodwin filed her first grievance, so Telles could not possibly have been motivated by a retaliatory intent. I therefore dismiss Coleman's retaliation claim to the extent it is based on this incident.

The second incident occurred in June 2022. *Id.* at 6. On that date, Telles again entered the vault and yelled at Coleman while approaching her, eventually backing her against a fence and grabbing her arm, which made her fear for her safety. *Id.* The gap between Goodwin's first grievance in August 2020 and this incident is too long to support an inference of retaliation. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001) ("Action taken (as here) 20 months later suggests, by itself, no causality at all."). The plaintiffs' complaint in this case does not state when Goodwin filed her second grievance. Additionally, it is not clear from the complaint that Coleman was a witness for Goodwin's second grievance, that Telles knew that she was, or when he learned that. Absent further development, the complaint's allegations do not plausibly allege retaliation based on the June 2022 incident. I therefore dismiss Coleman's retaliation claim based on the June 2022 incident.

Finally, Coleman asserts that during the COVID shutdown, Telles assigned her "extraordinary tasks and responsibilities" that "exceeded the burden placed on any other

employee." *Id.* at 11.  I take judicial notice that COVID pandemic shutdowns generally started in March 2020. Fed. R. Evid. 201(b)(1).  But Goodwin did not file her first grievance until August 2020, so to the extent Coleman is referring to the time between March and August 2020, Telles could not have given her extra duties in retaliation because Goodwin had not yet complained, and Coleman was not yet a witness.  It is unclear from the complaint how long the PAO was in shutdown status and when Telles allegedly gave Coleman the increased duties vis-à-vis Telles learning that Coleman was a witness for Goodwin's second grievance.  If he assigned her increased duties before August 2020, his conduct could not have been retaliatory because Goodwin had not yet complained.  Although "close to stating a claim" based on the extra duties during the COVID shutdown, "without some further factual enhancement [the complaint] stops short of the line between possibility and plausibility of entitle[ment] to relief." *Twombly*, 550 U.S. at 557 (quotation omitted, second alteration in original).

I dismiss Coleman's retaliation claims.  However, because it is not clear that amendment would be futile, I grant Coleman leave to amend if facts exist to do so. *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1118 (9th Cir. 2013) ("As a general rule, dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." (simplified)).

### 3.  Pagdanganan

Telles argues that he could not have retaliated against Pagdanganan by denying overtime during the COVID shutdown because Goodwin complained in August 2020, after the shutdown started.  Thus, he contends that he could not have acted against Pagdanganan with a retaliatory motive prior to when Goodwin complained.  Clark County did not move to dismiss Pagdanganan's retaliation claims.

The plaintiffs did not respond to Telles' timing argument. Accordingly, they consent to dismissal under Local Rule 7-2(d). Additionally, like Coleman, Pagdanganan could not be the victim of retaliatory conduct before she became a witness. Thus, without further factual development, the complaint fails to state a retaliation claim as to Pagdanganan. Because it is not clear that amendment would be futile, I grant leave to amend if facts exist to do so.

### 4. Reid

Reid voluntarily dismissed her retaliation claims, so I do not address them further. ECF No. 26 at 11.

### D. Sex Discrimination (Counts Four and Five)

Goodwin and Coleman assert claims for sex discrimination under Title VII and NRS § 613.330. Telles argues that Goodwin and Coleman did not plead sufficiently severe or pervasive conduct that interfered with their work performance. Clark County did not move to dismiss these claims. The plaintiffs respond that they need not allege severe and pervasive conduct interfering with their work environment to state a prima facie sex discrimination claim.

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e–2(a)(1). This language "giv[es] rise to at least three types of sex discrimination claims: disparate treatment (adverse employment actions motivated by sex); quid pro quo sexual harassment (conditioning employment benefits on submission to sexual advances); and hostile work environment harassment (unwelcome sexual advances so severe as to alter the terms and conditions of employment)." *Maner v. Dignity Health*, 9 F.4th 1114, 1120 (9th Cir. 2021). Based on the plaintiffs' response to Telles' motion,

11

Goodwin and Coleman are asserting disparate treatment claims in counts four and five. *See* ECF No. 15 at 13 & n.2.

"To establish a *prima facie* case of disparate treatment under Title VII, a plaintiff must [plausibly allege]: (1) that the plaintiff belongs to a class of persons protected by Title VII; (2) that the plaintiff performed his or her job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006). None of these elements requires the plaintiffs to show severe and pervasive conduct interfering with their jobs. Telles offers no other basis for dismissal except his argument that the allegations are false, which I cannot consider at this stage of the proceedings. I therefore deny Telles' motion to dismiss Goodwin and Coleman's sex discrimination claims.

### E. Religious Discrimination (Counts Six and Seven)

Goodwin asserts claims for religious discrimination under Title VII and NRS § 613.330. Telles argues that she has not alleged an adverse employment action. The plaintiffs respond that Goodwin pleaded adverse employment actions related to her change in duties and being subject to a hostile work environment. In reply, Telles argues that the complaint alleges he reassigned Goodwin's duties over a year after he supposedly learned of her religion, so there is no reasonable inference of religious discrimination. Clark County did not move to dismiss these claims.

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . . ." 42 U.S.C. § 2000e–2(a)(1). Like the sex discrimination claim, to

establish a prima facie case of disparate treatment based on religion, a plaintiff must allege: "(1) [she] is a member of a protected class; (2) [she] was qualified for [her] position; (3) [she] experienced an adverse employment action; and (4) similarly situated individuals outside [her] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004). For a disparate treatment claim, an adverse employment action "is one that materially affects the compensation, terms, conditions, or privileges of employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (simplified). Aside from the obvious examples like termination, other actions like "assigning more, or more burdensome, work responsibilities" may constitute an adverse employment action. *Id.* However, actions that do not result in changes to the conditions of employment, such as an investigation that results in no action against the investigated employee, are not adverse employment actions in the disparate treatment context. *Campbell v. Haw. Dep't of Educ.*, 892 F.3d 1005, 1013 (9th Cir. 2018).

      Goodwin adequately alleges an adverse employment action. She alleges that Telles "stripped [her] of her duties as an Estate Coordinator," reassigned her to handle intake with her co-plaintiff Reid, and that this "demotion of duties" negatively impacted her by making her less competitive for future promotions. ECF No. 1 at 9. She also alleges that he denied her the opportunity to work overtime. *Id.* at 10. Goodwin thus plausibly alleges employment actions that materially affected her compensation and the terms and conditions of her employment.

      I decline to consider Telles' argument, raised for the first time in his reply, that because he learned of her religious affiliation in early 2019 but did not change her job duties until August 2020, "the timing shows the move was based on operation need," not religious discrimination.

ECF No. 19 at 4; *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). But even if I considered the argument, Telles presents no authority for the proposition that there must be some temporal proximity between when he learned of Goodwin's religion and the adverse employment action. Goodwin alleges Telles made various comments about her religion as circumstantial evidence "that a discriminatory reason more likely motivated the employer to make the challenged employment decision." *Cornwell*, 439 F.3d at 1028 (quotation omitted); *see* ECF No. 1 at 9. That is sufficient at this stage of the proceedings. I therefore deny Telles' motion to dismiss Goodwin's religious discrimination claims.

### F. Age Discrimination (Counts Eight and Nine)

Reid asserts claims for age discrimination under the Age Discrimination in Employment Act (ADEA) and NRS § 613.330. Telles argues that this claim fails because the only adverse employment action Reid alleges was legitimate because Reid was insubordinate. Clark County argues that Reid has not alleged that she was performing her job satisfactorily and, to the contrary, she alleges she was unable to keep up with her duties. Clark County also argues that Reid was not fired or replaced by someone outside her protected class. The plaintiffs respond that I cannot consider the veracity of their pleadings or Telles' version of events at this stage. They also argue that Reid did not admit she was not performing her job satisfactorily; rather, Telles stripped Reid of her duties and assigned her other work that was too much for one person to complete. They acknowledge, however, that the complaint does not specifically state Reid was performing her job satisfactorily, so they request leave to amend. In reply, Clark County argues that Reid failed to allege that she was replaced by a younger employee or there were other circumstances giving rise to an inference of age discrimination.

The ADEA makes it unlawful "to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). To allege a prima facie case of disparate treatment based on age, Reid must plausibly allege that she "was (1) at least forty years old, (2) performing [her] job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207-08 (9th Cir. 2008) (quotation omitted).

The plaintiffs concede that the complaint does not specifically allege that Reid was performing her job satisfactorily and they did not respond to Clark County's argument that the complaint does not allege that Reid was replaced by a younger employee. I therefore dismiss this claim, with leave to amend.

### G. Race Discrimination (Counts Ten and Eleven)

Both Telles and Clark County note that Coleman is not the only white plaintiff, but she is the only one to allege race discrimination. In response to Clark County's motion, Coleman voluntarily dismissed her race discrimination claims, and requested the dismissal be without prejudice. ECF No. 26 at 11. These claims are therefore voluntarily dismissed without prejudice.

### H. Hostile Work Environment (Counts Twelve and Thirteen)

All of the plaintiffs assert claims for hostile work environment under Title VII and NRS § 613.330. Telles argues that the plaintiffs allege offensive conduct generally but have failed to allege how his purported misconduct was intended to discriminate against the plaintiffs for their membership in a protected class. The plaintiffs respond that they set forth adequate allegations of discrimination based on protected grounds in their other claims and counts twelve and thirteen incorporate these allegations. Clark County did not move to dismiss these claims.

Title VII makes it unlawful for an employer to discriminate against an individual with respect to the compensation, terms, conditions, or privileges of employment based on the individual's "race, color, religion, sex, or national origin." 42 U.S.C. 2000e–2(a)(1). "This includes a prohibition against creating a hostile work environment." *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 686 (9th Cir. 2017). To state a hostile work environment claim based on one or more of the protected categories, the plaintiff must plausibly allege (1) that she "was subjected to verbal or physical conduct" based on the protected category; (2) "that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Id.*

The plaintiffs do not adequately respond to Telles' motion. They state that the complaint alleges the bases on which the plaintiffs were discriminated against. But I have dismissed, and the plaintiffs have abandoned, some of those claims. Additionally, disparate treatment discrimination and hostile work environment are not the same thing. A person could be discriminated against based on a protected category but be subjected to a hostile work environment based on another category. The plaintiffs must plausibly allege facts for each plaintiff that would satisfy each element of a hostile work environment claim. In their opposition, the plaintiffs cite no law and perform no analysis on how the facts in the complaint plausibly allege a hostile work environment claim for any plaintiff. Stating in general fashion that they have been discriminated against is insufficient. I therefore dismiss this claim with leave to amend.

## II. CONCLUSION

I THEREFORE ORDER that defendant Robert Telles' motion to dismiss **(ECF No. 13) is GRANTED in part** and defendant Clark County's motion to dismiss **(ECF No. 17) is**

**GRANTED**. The plaintiffs have voluntarily dismissed their IIED claims, Reid voluntarily dismissed her retaliation claims, and Coleman voluntarily dismissed her race discrimination claims. I dismiss Coleman and Pagdanganan's retaliation claims, Reid's age discrimination claims, and all plaintiffs' hostile work environment claims, with leave to amend.

I FURTHER ORDER that the plaintiffs may file an amended complaint by February 26, 2025. If the plaintiffs do not amend by that date, the case will proceed on Goodwin's retaliation claim, Goodwin and Coleman's sex discrimination claims, and Goodwin's religious discrimination claims.

DATED this 5th day of February, 2025.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE